IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–02516–REB–KMT

ADRIENNE ARAGON,

     Plaintiff,

v.

MICHELE WAGNER, in her individual and official capacity,
ROBERT KLADDE, in his individual and official capacity
JOHN DIXON, in his individual and official capacity,
LAUREN JOHNSON, in her individual and official capacity,
KEVIN PALETTA, CHIEF OF POLICE, LAKEWOOD POLICE DEPARTMENT, in his
individual and official capacity, and
CITY OF LAKEWOOD, in its official capacity,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

_____

**Magistrate Judge Kathleen M. Tafoya**

     This case comes before the court on the "Motion to Dismiss Amended Complaint and

Jury Demand of Defendants Wagner, Dixon, Paletta, and the City of Lakewood"[1] (Doc. No. 32,

filed Feb. 11, 2013 [hereinafter "Lakewood Defs. Mot. Dismiss]) and "Defendant Robert

Kladde's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P.

---

[1] For clarity, the court refers to Defendants Wagner, Dixon, Paletta, and the City of
Lakewood as the "Lakewood Defendants."

12(b)(6)" (Doc. No. 34, filed Feb. 11, 2013 [hereinafter "Kladde Mot. Dismiss").[2]  For the

following reasons, the court respectfully recommends that Defendants' Motions to Dismiss be

GRANTED.

**FACTUAL BACKGROUND**

The following factual background is taken from Plaintiff's Amended Complaint.  (Doc.

No. 26, filed Jan. 28, 2013.)  In this case, Plaintiff alleges that Defendants violated her Fourth

and Fourteenth Amendment rights by using excessive force against her, placing her under arrest

for obstructing a police officer and resisting arrest, and thereafter pursuing those charges.

On March 30, 2011, Plaintiff contacted the Lakewood Police Department by calling 911

from a neighbor's house.  (Am. Compl. ¶ 9.)  Plaintiff sought to have the Lakewood Police

remove her brother, his fiancé, and Plaintiff's father, from her home.  (*Id.*)

Upon his arrival at the scene, Defendant Kladde, a Lakewood police officer, immediately

spoke with Plaintiff, allegedly in a "rude and hostile manner."  (*Id.* ¶ 10.)  Defendant Kladde

instructed Plaintiff to remain at her neighbor's home.  (*Id.* ¶ 11.)

A short time later, from her neighbor's home, Plaintiff saw several officers jump onto her

father, who was outside of Plaintiff's home, and push him to the ground.  (*Id.* ¶ 12.)  Plaintiff

opened the door of her neighbor's house, walked toward the officers, and requested they "be

---

[2] Defendant Lauren Johnson has not yet been served with Plaintiff's Amended
Complaint.  (*See* Order to Show Cause, Doc. No. 51.)  Accordingly, the court does not address
Plaintiff's claims against Defendant Johnson in this Recommendation and only addresses the
factual allegations relating to Defendant Johnson to provide context.  The court has directed
Plaintiff to serve Defendant Johnson no later than August 12, 2013.  (Minute Order Discharging
Order to Show Cause, Doc. No. 53, filed July 15, 2013.)

careful" because her father was disabled.  (*Id.* ¶ 14.)  When she reached the location of the officers, Plaintiff was thrown backwards, off her feet, by Defendant Kladde.  (*Id.* ¶ 15.)  More specifically, Plaintiff alleges that Defendant Kladde grabbed Plaintiff by her shirt and threw her "with extreme force."  (*Id.*) Plaintiff landed "near her window" and immediately felt excruciating pain in her left wrist.  (*Id.*)  She attempted to move her wrist, but could not.  (*Id.*)  When Plaintiff asked Defendant Kladde why he threw her backward, Defendant Kladde responded "shut up or I'll arrest you."  (*Id.*)  Defendant Kladde then allegedly ordered Plaintiff to "stay down" and later "worked with Officer Johnson by providing her false information to ultimately arrest Plaintiff."  (*Id.*)

Plaintiff initially complied with Defendant Kladde's order to "stay down"; however because of the level of pain she was experiencing, she went "inside" to tend to her injury.  (*Id.* ¶ 16.)  After Plaintiff contacted her mother to bring her to a hospital, several unidentified Lakewood police officers, including Defendant Johnson, entered Plaintiff's home and told Plaintiff that they needed a statement from her and wanted to take pictures of her wrist.  (*Id.* ¶ 17.)  Defendant Johnson obtained Plaintiff's statement about "the events that had taken place." (*Id.*)  Unidentified "officers" then allegedly caused Plaintiff more pain by handcuffing her, stating that it was necessary "for their protection."  (*Id.*)  Defendant Johnson allegedly placed handcuffs tightly on Plaintiff and ignored Plaintiff's request that the handcuffs be loosened, due to the severe pain in her wrist.  (*Id.* ¶ 19.)  The "officers" then frisked Plaintiff, checking for weapons.  (*Id.* ¶ 17.)

Plaintiff alleges she was then led to a police car and placed in the back seat.  (*Id.* ¶ 18.) At that point, Plaintiff was notified that she was under arrest for obstructing justice and resisting arrest.  (*Id.*)  However, Plaintiff was first taken to Swedish Medical Center Emergency Department and where she alleges she was handcuffed to the bed in the emergency room  (*Id.* ¶ 20.)  After an examination and x-ray, it was confirmed that Plaintiff's wrist was broken.  (*Id.*) Plaintiff was placed in a sling and referred to see an orthopedic doctor for a cast.  (*Id.*)

Plaintiff was then taken to the Lakewood Police Department and held in a booking cell. (*Id.* ¶ 21.)  Plaintiff later saw Defendant Kladde walk in and ask another officer whether Plaintiff's wrist was broken.  (*Id.*)  When the officer confirmed that it was broken, Plaintiff alleges that Defendant Kladde responded "well, then you need to write this in the report."  (*Id.*) After Defendant Kladde noticed that Plaintiff had been listening to his conversation with the other officer, Defendant Kladde shut Plaintiff's cell door.  (*Id.*)  Plaintiff was then transferred to the Jefferson County Detention Facility and posted bond the following day.  (*Id.* ¶ 22.)

The charges against Plaintiff were ultimately dismissed.  (*Id.* ¶ 23.)  Plaintiff maintains that this evinces a lack of probable cause to support her initial arrest.  (*Id.*)

Plaintiff alleges that because Defendant Dixon[3] and Defendant Wagner, the latter being Defendant Kladde's supervisor, were present at the scene, they had an affirmative duty to intervene and prevent Defendant Kladde from using excessive force and prevent her allegedly unlawful arrest.  (See *id.* ¶¶ 25-28.)  Plaintiff further alleges that Defendants Dixon and Wagner

---

[3]Plaintiff also alleges that because Defendant Dixon assisted in the arrest of Plaintiff's father, he was a "concurrent cause" of Plaintiff's injuries.  (Am. Compl. ¶ 25.)

had an affirmative duty under Colo Rev. Stat. § 18-8-802 to report the use of force by a fellow officer, but failed to do so with respect to Defendant Kladde's use of force on Plaintiff. (*Id.* ¶¶ 27, 30.)

Finally, Plaintiff alleges that the behavior of the Lakewood Police officers in this case demonstrates that there is a "likely pattern of misconduct by these and other officers of the City of Lakewood and the Lakewood Police Department and that such activity is condoned and promoted by the police chief, supervising officers, and the City of Lakewood." (*Id.* ¶ 31.) In support of this position, Plaintiff cites to a Benchmark City Survey, which concluded that Lakewood Police Department employees were "at fault" with respect to 20 percent of citizen complaints against the department. (*Id.* ¶ 32.) The same study also allegedly concluded that the Lakewood Police Department was "third from the bottom of the list" with respect to training hours per officer and that the time devoted to training police officers has declined significantly since 2009. (*Id.*)

## PROCEDURAL HISTORY

Plaintiff's Amended Complaint was filed on January 28, 2013. (*See* Am. Compl.) Plaintiff asserts five substantive claims pursuant to 42 U.S.C. § 1983 as follows: (1) a Fourth Amendment excessive force claim; (2) a Fourth Amendment false arrest; (3) a Fourteenth Amendment due process claim; (4) a Fourth Amendment malicious prosecution claim; and (5) a municipal liability claim against the City of Lakewood and Defendant Paletta in his official capacity as Chief of the Lakewood Police Department. (*See generally id.*) Plaintiff also asserts

two additional claims for (1) punitive exemplary damages under § 1983; and (2) attorney's fees, pursuant to 42 U.S.C. § 1988.  (*Id.* ¶¶ 73-78.)

Defendants' Motions to Dismiss were filed on February 11, 2013.  (*See* Lakewood Defs. Mot. Dismiss; Kladde Mot. Dismiss.)  Plaintiff filed separate responses to Defendants' Motions to Dismiss on March 15, 2013.  (Doc. Nos. 47 [Resp. Kladde Mot.] & 48 [Resp. Lakewood Mot.].)  The Lakewood Defendants filed their Reply on March 28, 2013 (Doc. No. 49 [Lakewood Reply]) and Defendant Kladde filed his Reply on March 29, 2013 (Doc. No. 50 [Kladde Reply]).  Accordingly, the motions to dismiss are ripe for the court's review and recommendation.

## LEGAL STANDARDS

### A.    *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dobbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Bellman*, 935 F.2d at 1198.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

6

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id.* at 678-80.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (citation omitted).

**B.      *Qualified Immunity***

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss. *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988). Once the defense is asserted, the burden shifts to the plaintiff to establish (1) that the defendant's actions violated a federal constitutional or statutory right and (2) that the federal right was clearly established at the time of the challenged conduct. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010); *see also Losavio*, 847 F.2d at 646. While the plaintiff bears this burden, at the motion to dismiss stage, well-pleaded factual allegations are taken as true, although the court must consider whether they plausibly give rise to a claim for relief. *Weise v. Casper*, 593 F.3d 1163,1166 (10th Cir. 2010).

The plaintiff first must establish that his allegations, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id*. This determination must be made

8

"in light of the specific context of the case, not as a broad general proposition." *Id.* "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in *Saucier*, holding that the sequence of the analysis is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223 (2009). The judges of the district courts and the courts of appeals are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id.* at 236. The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id.*

## ANALYSIS

### A.    *Claim Five and Official Capacity Claims*

Defendants argue that Plaintiff's claims against the individual defendants in their official capacities are redundant of Plaintiff's claims against the City of Lakewood and that Plaintiff's fifth claim against the City of Lakewood fails to state a claim for relief. The court agrees.

First, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 690 n. 55 (1978). Thus, "where a suit contains both entity and official capacity claims, the only defendant is the entity." *Doe v. Douglas Cnty. Sch. Dist.*, 775 F. Supp. 1414, 1416 (D. Colo.

9

1991).  "Naming either is sufficient, naming both is redundant."  *Stump v. Gate,* 777 F. Supp.

808, 816. n.3 (D. Colo. 1991).  Therefore, while Plaintiff has named all of the individual

defendants in their official capacities, only their employer, the City of Lakewood, is a proper

defendant to Plaintiff's § 1983 municipal liability claim.  As such, Plaintiff's official capacity

claims are properly dismissed as redundant of Plaintiff's claims against the City of Lakewood.

Turning to the merits of Plaintiff's municipal liability claim against the City of

Lakewood, § 1983 does not provide for liability against a municipality under a theory of

*respondeat superior.  Monell,* 436 U.S. at 691.  Rather, a municipality will only be held liable

under § 1983 for it's own acts—acts it "has officially sanctioned or ordered."  *Pembaur v. City*

*of Cincinnati,* 475 U.S. 469, 480 (1986).

Here, Plaintiff's Amended Complaint seeks to hold the City of Lakewood liable under §

1983 based on an alleged failure to train and supervise its officers.  (*See* Compl. ¶¶ 63-72.)  The

Supreme Court has recognized that "[a] municipality's culpability for a deprivation of rights is at

its most tenuous were a claim turns on a failure to train."  *Connick v. Thompson,* --- U.S. ----,

131 S.Ct. 1350, 1359 (2011).  A municipality "cannot be held liable for [a] failure to train or

supervise . . . unless [its] policymakers 'can reasonably be said to have been deliberately

indifferent to the need' for further training or supervision."  *Bryson v. City of Okla. City,* 627

F.3d 784, 789 (10th Cir. 2010) (quoting *City of Canton v. Harris,* 489 U.S. 378, 390 (1989).

"This may be demonstrated 'when the municipality has actual or constructive notice that its

action or failure to act is substantially certain to result in a constitutional violation, and it

consciously or deliberately chooses to disregard the risk of harm.'"  *Lewis v. McKinley Cnty. Bd.*

*of Cnty. Comm'rs*, 425 F. App'x 723, 726 (10th Cir. 2011) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).  "In most instances, notice can be established by proving the existence of a pattern of tortious conduct."  *Barney,* 143 F.3d at 1307.  "In a 'narrow range of circumstances,' however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations."  *Id.* at 1307-08 (citing *Board of Cnty Comm'rs v. Brown,* 520 U.S. 397, 409 (1997)).

The court finds that Plaintiff fails to state a § 1983 claim for municipal liability under a failure to train or supervise theory.  Notably, Plaintiff has not set forth a pattern of tortious conduct demonstrating that City of Lakewood had actual or constructive notice of a grave potential for constitutional violations similar to those allegedly suffered by Plaintiff.  Plaintiff's speculative and conclusory allegation that the "intentional and malicious behavior" of the Lakewood police officers in this case demonstrates a "likely pattern of misconduct by these and other officers" that has been "condoned and promoted" by the City of Lakewood is clearly insufficient.

Plaintiff also maintains that her failure to train and supervise claim is supported by the Benchmark City Survey's conclusions that the Lakewood Police Department ranked "third from the bottom" (out of twenty-eight departments nationwide) with respect to training hours per officer and that the time the City of Lakewood devoted to training police declined significantly (by approximately 32 percent) since 2009.  (Resp. at 8 (citing Am. Compl. ¶ 32).)  However, the

Benchmark Survey's broad and generalized conclusion fails to demonstrate that the City of Lakewood had actual or constructive knowledge that its police training was deficient as to the "specific skills" at issue in this case—namely, the appropriate use of force, and how and when to make an arrest. *Barney,* 143 F.3d at 1307-08. As such, Plaintiff's reference to the Benchmark Survey falls well short of establishing that the City of Lakewood's policymakers acted with deliberate indifference to a need for training or supervision with respect to the specific skills that allegedly violated Plaintiff's constitutional rights.

Finally, Plaintiff maintains that her municipal liability claim "should not be dismissed until additional facts are gleaned from discovery." (*Id.* at 8.) Whether discovery may yield evidence of an unconstitutional failure to train or supervise, however, is not the governing legal standard. "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

Ultimately, the court finds that Plaintiff has failed to state a claim for § 1983 municipal liability. Accordingly, the Defendants' motions to dismiss are properly granted to the extent they seek to dismiss Plaintiff's claims against Defendants in their official capacity, as well as Plaintiff's fifth claim for relief altogether. Further, because Defendant Paletta is only named as a defendant with respect to Plaintiff's fifth claim (*see* Am. Compl. at 7), the court finds that he is properly dismissed as a defendant.

12

**B.      *Claim One – Excessive Force and Failure to Intervene***

Defendant Kladde argues that Plaintiff's first claim for excessive force fails because Plaintiff has failed to allege that he actually effected a "seizure" of Plaintiff under the Fourth Amendment.  The Lakewood Defendants argue, *inter alia*, that, in the absence of a predicate use of excessive force by Defendant Kladde, they cannot be held liable for failing to intervene to prevent or stop that use of force.  The court agrees.

"The Fourth Amendment protects individuals against 'unreasonable searches and seizures.'"  *Bella v. Chamberlain,* 24 F.3d 1251, 1255 (10th Cir. 1994).  "To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'"  *Id.*; *see also Brooks v. Gaenzle,* 614 F.3d 1213, 1219 (10th Cir. 2010).

For purposes of the Fourth Amendment, "[a] person is seized by the police . . . when the officer, by means of physical force or show of authority, terminates or restrains [her] freedom of movement, through means intentionally applied."  *Brendlin v. California,* 551 U.S. 249, 254 (2007) (internal quotation marks and citations omitted); *see also Brooks,* 614 F.3d at 1221.  An attempt to seize a person, however "*does not* amount to a 'seizure' within the meaning of the Fourth Amendment."  *Cnty of Sacramento v. Lewis,* 523 U.S. 833, 844 (1998) (citing *California v. Hodari D.,* 499 U.S. 621 (1991)).  In other words, an assertion of authority by the police that does not result in a submission to that authority does not constitute a seizure.  *See Bella,* 24 F.3d at 1255 (The *Hodari* court "expressly stated that an assertion of authority by the police without submission by the fleeing person does not constitute a seizure.")

13

Under the facts alleged, the court finds that Defendant Kladde's actions did not constitute a seizure of Plaintiff, as is necessary to invoke the protections of the Fourth Amendment. First, it not clear that Defendant Kladde threw Plaintiff to the ground with the intention of terminating or restraining Plaintiff's freedom; instead, it appears that he may have done so in order to forcefully remove her from the area of the struggle with her father. (*See* Am. Compl. ¶ 15.)

In any event, even to the extent that Defendant Kladde's use of force and subsequent comments of "shut up or I'll arrest you" and "stay down" were intended to restrain or terminate Plaintiff's freedom, they clearly did not result in Plaintiff's submission. Instead, Plaintiff admits that, although she initially complied with Defendant Kladde's direction to stay down, she nevertheless got up, proceeded "inside" to tend to her injury, and contacted her mother to bring her to the hospital. (Am. Compl. ¶ 16-17.) Thus, to the extent that Defendant Kladde's use of force and orders were intended to terminate or restrain Plaintiff's freedom of movement, they were unsuccessful and therefore did not constitute a seizure. *See Reeves v. Churchich,* 484 F.3d 1244, 1260 (10th Cir. 2007) (finding that a plaintiff's conduct of leaving her apartment several times despite officers' display of weapons and harsh verbal commands belied her contention that she believed she was not free to leave).

Some time shortly after she returned to the house, Plaintiff was placed in handcuffs and arrested for obstructing a police officer and resisting arrest. However, it was not until that critical juncture that Plaintiff was actually seized. *Cf. Cole v. Bone,* 993 F.2d 1328, 1332-33 (8th Cir. 1994) (cited with approval in *Bella,* 24 F.3d at 1255-56) (holding that a fleeing driver was seized only after he was struck by a bullet, not when his truck was hit by bullets or struck

14

roadblocks, as those assertions of authority failed to produce a stop).  Accordingly, because

Defendant Kladde's use of force itself did not effectuate or produce a seizure, Plaintiff fails to

state a claim for excessive force under the Fourth Amendment against Defendant Kladde.

Finally, the court finds that Plaintiff fails to state a claim against Defendants Wagner and

Dixon for failing to intervene to prevent Defendant Kladde's use of force.  "Establishing a

constitutional violation [for excessive force] is a necessary predicate to any claim that an officer

failed to intervene."  *Mata v. City of Farmington,* 791 F. Supp. 2d 1118, 1156 (D.N.M. 2011)

(citing *Hall v. Burke,* 12 F. App'x 856, 861 (10th Cir. 2001)).  Because Plaintiff has failed to

state a claim for excessive force against Defendant Kladde, the court finds that she likewise has

failed to state a claim against Defendants Wagner and Dixon for failure to intervene.  Therefore,

the court finds that Defendants' motions to dismiss are properly granted to the extent that they

seek to dismiss Plaintiff's first claim against Defendants Kladde, Wagner, and Dixon.

## C.      *Claim Two – False Arrest*

The Lakewood Defendants and Defendant Kladde both argue that Plaintiff fails to state a

false arrest claim against them because Plaintiff does not allege that they were personally

involved in executing Plaintiff arrest.  The court rejects this argument.

### 1.      *Defendant Kladde*

For the reasons discussed above, the court finds that Defendant Kladde's act of throwing

Plaintiff backwards and directives of "shut up or I'll arrest you" and "stay down" did not amount

to a seizure that would give rise to Plaintiff's Fourth Amendment false arrest claim.  *See*

*Cumminsky v. Mines,* 248 F. App'x 962, 965 (10th Cir. 2007) (The constitutional right

underlying a claim for false arrest "is the Fourth Amendment right to be free from unreasonable *seizures*.") (emphasis added).  It is also clear that Plaintiff does not allege Defendant Kladde himself arrested Plaintiff after she returned to her home.  (*See* Am. Compl. ¶¶ 17-19.)

Nevertheless, Defendant Kladde may be held liable under § 1983 to the extent that he "caused" Plaintiff's arrest.  *See Esparza v. Bowman*, No. 12-2140, 2013 WL 1760932, at *3 (10th Cir. Apr. 25, 2013) (unpublished slip opinion) (citing *Snell v. Tunnell,* 920 F.2d 673, 700 (10th Cir. 1990)).  Plaintiff alleges that Defendant Kladde **"**work[ed] with Officer Johnson by providing her false information to ultimately arrest the Plaintiff" (Am. Compl. ¶ 15).  Although this allegation is conclusory, the court finds it plausible that Defendant Kladde provided the information, whether false or not, that formed the basis of Plaintiff's arrest.  *Cf. Esparza,* 2013 WL 1760932, at *3 (holding that sheriff who signed arrest warrant affidavit but did not actually execute the arrest could be held liable under § 1983 for false arrest).  Because Plaintiff was ultimately arrested for resisting arrest and obstructing a police officer; it is likely that Plaintiff's interaction with Defendant Kladde—namely, approaching the scene where officers were restraining her father to request that Defendant Kladde and other officers be careful with her father, and then returning to her home after Defendant Kladde directed her to "stay down"—constituted the factual basis to support her arrest.  Therefore, the court finds that Plaintiff has sufficiently alleged that Defendant Kladde caused her unlawful arrest.

### 2.      *Defendants Dixon and Kladde*

Although it is not necessarily a model of clarity, the court finds that Plaintiff's Amended Complaint alleges, not that Defendants Wagner and Dixon actually arrested or caused Plaintiff's

16

arrest, but instead that they failed to intervene to prevent Plaintiff's allegedly unlawful arrest. More specifically, Plaintiff alleges that both Defendants Dixon and Wagner were present at the scene (Am. Compl. ¶ 25-27): that all officers present had an affirmative "duty to intervene to assist Plaintiff" (*id.* ¶ 33); that there was "a reasonable opportunity to intervene since the incident transpired over the course [] of approximately one hour" (*id.* ¶ 33); and that "none of the Defendant's [sic] intervened on Plaintiff's behalf and therefore failed to fulfill their duty to Plaintiff" (*id.*).  (*See also id.* ¶ 41 (incorporating all previous allegations into Plaintiff's second claim for false arrest)).  Plainly, Plaintiff's allegations regarding the duration of the "incident" do not relate to Defendant Kladde's use of force, as that incident transpired very quickly.  The only "incident" that reasonably could have developed over the course of an hour was Plaintiff's arrest. As such, construing the Amended Complaint in a light most favorable to Plaintiff, the court finds that Plaintiff seeks to hold Defendants Dixon and Wagner liable for failing to intervene to prevent her arrest.  (*See also* Resp. Lakewood Defs. Mot. at 7 (clarifying that the Amended Complaint theorizes that Defendants Wagner and Dixon failed to prevent Plaintiff's arrest).)

The Tenth Circuit has held that it is clearly established that law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens, including the right to be free from unlawful arrest, from infringement by other law enforcement officers in their presence. *Vondrak v. City of Las Cruces,* 535 F.3d 1198, 1210 (10th Cir. 2008) (*Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994)).  "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that a citizen has been unjustifiably arrested." *Id.*

17

The court finds that Plaintiff has sufficiently alleged that Defendants Dixon and Wagner failed to intervene to prevent her allegedly unlawful arrest.  As discussed above, both Defendant Dixon and Defendant Wagner were present at the scene.  Because the circumstances of Plaintiff arrest unfolded over a period of approximately an hour, the court finds it plausible that Defendants Dixon and Defendant Wagner either observed or had reason to know of Plaintiff's arrest.  *See also Vondrak,* 535 F.3d at 1210 ("Whether an officer had sufficient time to intercede or was capable of prevent the harm being caused by another officer is [ordinarily] an issue of fact for the jury.")  This is particularly salient as to Defendant Wagner who, as Defendant Kladde's supervisor, may well have been empowered to determine the propriety of Plaintiff's arrest.  Accordingly, the court finds that, assuming Plaintiff can establish a § 1983 claim for false arrest, Defendants Wagner and Dixon may be held liable for failing to intervene and prevent that arrest.

### 3.    Probable Cause

Defendant Kladde also argues that, to the extent that he is a proper defendant to Plaintiff's false arrest claim, it nevertheless fails because there was probable cause to conclude that Plaintiff obstructed a peace officer.[4]  The court disagrees.

"In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime."  *Kaufman v. Higgs,* 697 F.3d 1297 (10th Cir. 2012).  An officer has probable cause to

---

[4] Although Plaintiff was allegedly arrested for both resisting arrest and obstructing a peace officer (Am. Compl. ¶ 18), Defendant Kladde has not argued that there was probable cause to conclude that Plaintiff resisted her arrest.  The court declines to consider this issue *sua sponte.*

arrest if "facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay,* 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Jones v. City and County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988); *Wong Sun v. United States*, 371 U.S. 471, 481 n.9 (1963). Although probable cause need not be based on facts sufficient for a finding of guilt, it requires "more than mere suspicion." *United States v. Vazquez-Pulido,* 155 F.3d 1213, 1216 (10th Cir. 1998) (citing *United States v. Hansen,* 652 F.2d 1374, 1388 (10th Cir. 1981)). "Probable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer." *United States v. Snow,* F.3d 935, 942 (10th Cir. 1996).

To overcome qualified immunity, however, a plaintiff must go beyond demonstrating simply a lack of probable cause to support his or her arrest; as discussed above, the plaintiff must also demonstrate that the law was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. This "require[s] a section 1983 plaintiff to show that 'it would have been clear to a reasonable officer that probable cause was lacking under the circumstances.'" *See Kaufman,* 697 F.3d at 1300 (quoting *Koch v. City of Del City,* 660 F.3d 1228, 1241 (10th Cir. 2011)). As a practical matter, this standard is implemented "by asking whether there was 'arguable probable cause' for an arrest—if there was, a defendant is entitled to qualified immunity." *Id.* (quoting *Cortez v. McCauley,* 478 F.3d 1108, 1121 (10th Cir. 2007). "Under this framework . . . '[e]ven law enforcement officials who reasonably but mistakenly conclude that

probable cause is present are entitled to immunity." *Koch,* 660 F.3d at 1241 (quoting *Cortez,*

478 F.3d at 1120 & n.15).

Colorado Revised Statute § 18-8-104 provides:

A person commits obstructing a peace officer . . . when, by using or threatening to
use violence, force, physical interference, or an obstacle, such person knowingly
obstructs, impairs, or hinders the enforcement of the penal law or preservation of
the peace by a peace officer, acting under color of his or her official authority . . .
.

According to the allegations in the Amended Complaint, which must be taken as true,

Plaintiff did not at any time use or threaten to use violence or force.  (*See* Am. Compl. ¶ 14.)  As

such, the court must consider whether Plaintiff's actions, as alleged, actually or threatened to

physically interfere or impose an obstacle to the Lakewood police officer's preservation of the

peace.

"The obstacle or physical interference may not be merely verbal opposition or

remonstration." *Dempsey,* 117 P.3d 800, 810-11 (2005) (citing *Norwell v. City of Cincinnati,*

414 U.S. 14 (1973) & *State v. Srnsky,* 582 S.E.2d 859, 868 W. Va. 2003)).  However, because

"the statute [] includes within its ambit the 'use' as well as 'threat' of physical interference or

obstacle[,] . . . neither 'physical contact' nor actual physical interference is required." *Id.* at 810-

11.  Instead, "a combination of statements and acts by the defendant, including threats of

physical interference or interposition of an obstacle can form the crime of obstruction." *Id.* at

811.  The "obstacle" or "physical interference" also must be of "sufficient magnitude to

'obstruct, impair or hinder' enforcement of the officers' duty." *Id.* at 810.  Altogether, "[t]he

statute clearly targets conduct by the defendant evidencing that [s]he employed or threatened use

of 'physical interference' or an 'obstacle' and that [s]he 'knowingly' obstructed the enforcement of the penal law [or preservation of the peace] who was 'acting under color of official authority.'" *Id.* at 811-12.

Under the facts alleged, the court cannot conclude that there was "arguable probable cause" to support Plaintiff's arrest.  First, because, at very most, it amounted to mere verbal opposition, Plaintiff's request that the officers "be careful" with her father is plainly insufficient to constitute obstruction.  In addition, although Plaintiff may have disregarded Defendant Kladde's request that she remain in her neighbor's house, it is unclear that Plaintiff "had a corresponding obligation to comply" with this directive.  *Dempsey,* 117 P.3d at 811.

Most importantly, although Plaintiff approached the Lakewood police officers, apparently to the point of reaching the location where the officers were restraining her father, it is far from clear on the facts alleged whether Plaintiff's presence actually or threatened to physically interfere or impose an obstacle to the officers' discharge of their duties.  Indeed, Plaintiff maintains that she did not approach in a hostile manner, run, yell, or in any way threaten the officers.  (Am. Compl. ¶ 14.)  Moreover, even assuming that Plaintiff actually or threatened to physically interfere or impose an obstacle, it is equally unclear from the allegations whether her actions were of a sufficient magnitude to "obstruct, impair, or hinder" the officers' preservation of the peace.

As such, the court cannot conclude at this juncture that a reasonable officer would have concluded that probable cause was present to support Plaintiff's arrest for obstructing a peace officer.  Therefore, the court finds that Defendants are not entitled to qualified immunity from

Plaintiff's false arrest allegations, and Defendants' Motions to Dismiss are properly denied with respect to Plaintiff's second claim for relief.

**D.      *Claim Three – Due Process***

Defendants first argue that Plaintiff's fourth claim for violations of her Fourteenth Amendment due process rights is subsumed into her more specific constitutional claims—namely, her Fourth Amendment excessive force claim.  (Lakewood Defs. Mot. Dismiss at 11 (citing *Whitley v. Albers,* 475 U.S. 312, 327 (1986); *Bateman v. City of W. Bountiful,* 89 F.3d 704, 709 (10th Cir. 1996).  The court rejects this position.  As discussed above, Plaintiff was not actually seized at the time of Defendant Kladde's alleged display of force, and therefore the Fourth Amendment does not govern this conduct.  Accordingly, the court finds that this claim is properly asserted as a Fourteenth Amendment substantive due process claim.  *Clark v. Edmunds,* 513 F.3d 1219, 1222 (10th Cir. 2008) (treating a force-related claim originally brought under the Fourth Amendment as a Fourteenth Amendment due process claim where no Fourth Amendment seizure occurred); *see also Claybrook v. Birchwell,* 199 F.3d 350, 359 (6th Cir. 2000) (Fourteenth Amendment due process norms, rather than Fourth Amendment reasonableness standard, applies to claim seeking remuneration for physical injuries inflicted upon a third party while attempting to seize a perpetrator).

Nevertheless, the court finds that Plaintiff's third claim fails to state a claim for violations of her Fourteenth Amendment due process rights.  "The substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."  *Cnty. of Sacramento v. Lewis,* 523

22

U.S. 833, 847 (1998) (internal quotation marks omitted).  To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power."  *Uhlrig v. Harder,* 64 F.3d 567, 574 (10th Cir. 1995).  Rather, the plaintiff must show a "high level of outrageousness."  *Id.*  "[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governor and the governed.'"  *Lewis,* 523 U.S. at 853 (quoting *Daniels v. Williams,* 474 U.S. 327, 332 (1986)).

In *Clark*, the Tenth Circuit considered whether a sheriff violated the plaintiff's substantive due process rights by pushing her out of the way while taking her daughter into custody.  513 F.3d 1219.  The sheriff entered a motel room where the mother and her daughter were staying, with the intent to take the daughter into custody for a mental health examination.  *Id.* at 1221.  After some delay, the sheriff decided to seize the daughter and take her to his patrol car.  *Id.*  When the daughter made a loud noise, the plaintiff turned to see what was happening.  *Id.*  The sheriff then used his free arm to push the plaintiff out of his path.  *Id.*  Either as a direct result of the push or as a result of losing her balance or tripping, the plaintiff stumbled backwards and hit the glass dining room table and a chair.  *Id.*  The sheriff continued outside with the plaintiff's daughter, where he ordered her handcuffed and taken to the hospital and then returned to explain the reasons for taking her daughter into custody.  *Id.*

Under those facts, the Tenth Circuit agreed with the district court's conclusion that the plaintiff failed to establish that the sheriff's conduct shocked the conscience.  *Id.* at 1222-23.

First, the sheriff "had a legitimate interest in maintaining custody of [Plaintiff's] daughter as he escorted her from [Plaintiff's] residence to a waiting law enforcement vehicle.  His split-second decision to respond by clearing his path at the moment that [Plaintiff] turned back toward him served that interest, regardless of whether [Plaintiff] actually intended to interfere with his seizure of her daughter or not."  *Id.* (citing *Clark v. Summit Cnty. Sheriff,* 508 F. Supp. 2d 929, 935 (D. Utah. 2007); *see also Thompson v. City of Lawrence, Kan.,* 58 F.3d 1511, 1517 (10th Cir. 1995) (holding that it was objectively reasonable for officers in volatile situation to push to the floor and handcuff third party whose relationship to suspect and possible reaction to situation were unknown).  The Tenth Circuit also found that the Plaintiff had demonstrated that "the sheriff's actions toward the Plaintiff were 'tainted by an improper or malicious motive.'" *Clark,* 513 F.3d at 1223 (citing *Lewis,* 523 U.S. at 855).  Altogether, the court found that the sheriff was entitled to qualified immunity because the sheriff's response did not rise to the level of egregiousness required under *Lewis.*

Although the facts alleged in this case are not identical to the facts presented in *Clark,* the court finds that they are sufficiently similar to conclude that Defendant Kladde is entitled to qualified immunity.  Here, Defendant Kladde and other unidentified officers had a legitimate interest in restraining Plaintiff's father, who was ostensibly struggling against those officers, and in protecting bystanders.  Defendant Kladde's split-second decision to throw Plaintiff out of the way of that struggle when she arrived at the officers' location served that interest, even if Plaintiff did not intend to actual interfere with the officers' attempts to restrain her father.  Although Defendant Kladde allegedly used a higher degree of force than the sheriff in

*Clark*—insofar as the former "threw" Plaintiff out of the way, whereas the latter only "pushed" the plaintiff in that case—the court does not find that this tips the balance toward a conclusion that Defendant Kladde's alleged actions were highly outrageous.  Further, outside of a relatively innocuous, heat-of-the moment comment of "shut up or I'll arrest you," Plaintiff has not set forth any allegations suggesting that Defendant Kladde's actions were "tainted by an improper or malicious motive."  *Clark,* 513 F.3d 1219.

Altogether, because the circumstances alleged demanded Defendant Kladde's instant judgment, the court finds that Defendant Kladde's alleged actions do not rise to the level of egregiousness or highly outrageous conduct required to state a procedural due process claim under the Fourteenth Amendment.  Therefore, the court finds that Defendant Kladde is entitled to qualified immunity from Plaintiff's due process claim.  Further, because Plaintiff has failed to allege a predicate constitutional violation for which Defendants Dixon and Wagner might have had a duty to intervene, the court finds that these Defendants are also entitled to qualified immunity from Plaintiff's due process claim.  *Mata,* 791 F. Supp. 2d at 1156.  Accordingly, the court finds that Defendants' motions to dismiss are properly granted as to Plaintiff's third claim for relief.

**E.      *Claim Four – Malicious Prosecution***

Plaintiff's fourth claim alleges that Defendants violated her Fourth Amendment right to be free from malicious prosecution.[5]  To state a claim for malicious prosecution, a § 1983

---

[5] Plaintiff's malicious prosecution claim may be *malapropos*.  "Unlike a false arrest or false imprisonment claim, malicious prosecution concerns detention only '[a]fter the institution

plaintiff must allege "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Novitsky v. City of Aurora,* 491 F.3d 1244, 1258 (10th Cir. 2007).

    Defendants again argue that Plaintiff fails to state a claim against them because they were not personally involved in Plaintiff's arrest. For the reasons discussed above with respect to

---

of legal process.'" *Wilkins v. DeReyes,* 528 F.3d 790, 798 (10th Cir. 2008) (quoting *Mondragon v. Thompson,* 519 F.3d 1078, 1083 (10th Cir. 2008)). "In this context, a Fourth Amendment violation can exist only when a plaintiff alleges the legal process itself to be wrongful. If a plaintiff challenges merely the confinement *after* the institution of process, but not the process itself, 'the protections offered by the Fourth Amendment do not apply.'" *Id.* (quoting *Jones v. City of Jackson,* 203 F.3d 875, 880 (5th Cir. 2000)) (emphasis in original). Where a plaintiff is arrested without a warrant—which triggers "the Fourth Amendment require[ment] of a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest," *Gerstein v. Pugh,* 420 U.S. 103, 114 (1975)—their challenge is ordinarily directed at the "probable cause determination made during the constitutionally-required probable cause hearing," *Wilkins,* 528 F.3d at 798.

    In addition, the court notes that a "malicious prosecution claim against a police officer is an anomaly." *Lopez v. Prince,* No. 11-cv-02352-CMA-BNB, 2012 WL 3277178, at *5 (D. Colo. Aug. 9, 2012) In her concurrence in *Albright v. Oliver,* 510 U.S. 266, 279 n.5 (1994), Justice Ginsberg reasoned that the principal player in carrying out a prosecution is not the police officer but, rather, the prosecutor. Thus, "the anomaly lies in the reality that, under a malicious prosecution claim against an officer, 'the star player is exonerated, but the supporting actor is not.'" *Lopez,* 2012 WL 3277178 (quoting *Albright,* 510 U.S. at 279 n.5 (Ginsburg, J., concurring)). *See also Washington v. Summerville,* 127 F.3d 552, 559-60 (7th Cir. 1997).

    Although not entirely clear from the allegations in the Amend Complaint, it appears that legal process was instituted against Plaintiff as she posted bond the day after she was arrested. (Am. Compl. ¶ 22.) However, Plaintiff has not directly challenged the result of any probable cause hearing. Further, to the extent that Plaintiff alleges that Defendants' maliciously brought criminal charges against her, in reality, those charges were actually brought by a prosecutor. Nevertheless, because Defendants have not raised these arguments, the court declines to resolve them *sua sponte.*

Plaintiff's false arrest claim, the court finds that Defendant Kladde may be held liable to the extent that he caused Plaintiff's arrest, confinement, or prosecution, *see id.,* and that Defendants Wagner and Dixon may be held liable to the extent that they failed to intervene to prevent Plaintiff's arrest and prosecution, *see Vondrak,* 535 F.3d at 1210 (It is clearly established that "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official.").

Defendants also argue that Plaintiff's malicious prosecution claim fails because there was probable cause to support Plaintiff's arrest and because Plaintiff has failed to allege that Defendants acted with malice. As to the former argument, for the same reasons discussed *supra* with respect to Plaintiff's false arrest claim, the court cannot find that there was probable cause to support Plaintiff's arrest or continued confinement.

As to the latter argument, however, the court agrees with Defendants that the Amended Complaint fails to provide the requisite factual specificity on the "key element of malice." *Myers v. Koopman,* No. 09-cv-02802-REB-MEH, 2010 WL 3843300, at *4 (D. Colo. Sept. 27, 2010) ("*Myers I*"). Plaintiff's allegation that "Defendants' primary motive in bringing criminal charges against Plaintiff was a motive other than a desire to bring to justice a person that Defendants thought had committed a crime" (Am. Compl. ¶ 60) is no more than a threadbare recital of the malice element. *Montgomery Ward & Co. v. Pherson,* 272 P.2d 643, 646 (Colo. 1954).

In reaching this conclusion, the court acknowledges that under the Colorado common law tort of malicious prosecution—which is analogous to a § 1983 malicious prosecution claim, *see McCarty v. Gilchrist,* 646 F.3d 1281 (10th Cir. 2011)—malice "may be inferred from the want of probable cause." *Pherson,* 272 P.2d at 646; *see also Barton v. City & Cnty. of Denver,* 432 F. Supp. 2d 1178, 1195 (D. Colo. 2006).  However, at least one decision from the District of Colorado has questioned the applicability of that inference with respect to a § 1983 claim.  *See Heaney v. Costigan,* No. 09-cv-01006-MSK-BNB, 2011 WL 4368837, at *6 (D. Colo. Sept. 16, 2011) (applying the inference despite having "some doubt" over whether the "mere fact that false statements were necessary to establish probable cause permits an inference of malice").

More importantly, it appears that cases from this District that have found the inference applicable only when an officer supplied false or misleading information that furthered the prosecution.  *See id.*; *Kennedy v. Finley,* 11-cv-00967-REB-KMT, 2012 WL 2564796, at *6 (D. Colo. July 2, 2012) (Blackburn, J.) (relying in part on the inference and finding allegations of malice sufficient where the officer allegedly falsely stated that the bullets used in the underlying crime matched those seized from the plaintiff's house, while knowing his methods were questionable); *Barton,* 432 F. Supp. 2d at 1194-95 ("Thus, a jury arguably may be able to infer . . . that if the officers supplied *false or misleading information* to prosecutors, the element of malice is satisfied . . . .") (emphasis added).  *See also Myers v. Koopman,* No. 09-cv-02802-REB-MEH, 2011 WL 2445863, at *2, 5 (D. Colo. June 17, 2011) (*"Myers II"*) (although not discussing the inference, finding allegations of malice sufficient where the officer allegedly prepared an arrest warrant containing false statements).  When such false or misleading

28

statements are not present, other decisions from this District have found general allegations of malice to be insufficient.  *See Myers I,* 2010 WL 3843300, at *4 (Blackburn, J.) (finding original complaint's conclusory allegations of malice as to a generalized group to be insufficient).

Here, Plaintiff's allegation that Defendant Kladde "worked with Officer Johnson by providing her false information to ultimately arrest Plaintiff" (Am. Compl.¶ 15) is plainly conclusory; Plaintiff does not specify what information Defendant Kladde conveyed to Defendant Johnson, nor does she specifically allege how that information was false.  The court therefore finds it inappropriate to infer that Defendant Kladde acted with malice based solely on the fact that there was a lack of probable cause to support Plaintiff's arrest.

Altogether, Plaintiff's factual allegations do not permit the court to infer more than a "mere possibility" that Defendant Kladde acted with malice.  *Iqbal,* 556 U.S. at 679.  While Plaintiff may believe that Defendant Kladde had a motive other than a desire to bring Plaintiff to justice, it is just as likely that Defendant Kladde made an unreasonable mistake in concluding that Plaintiff had committed the crime of obstruction, without any ulterior motive.  As such, Plaintiff's factual allegations at best are "merely consistent with" Defendant Kladde's liability and thus "stop[] short of the line between mere possibility and plausibility of entitlement to relief.."  *Id.* (citation and quotation marks omitted).

Accordingly, because Plaintiff has failed to sufficiently allege that Defendant Kladde acted with malice in arresting her or causing her continued confinement, Defendant Kladde is entitled to qualified immunity from Plaintiff's malicious prosecution claim.  Further, because Plaintiff has failed to state a predicate claim for malicious prosecution, Defendants Dixon and

29

Case 1:12-cv-02516-REB-KMT  Document 54  Filed 07/18/13  USDC Colorado  Page 30 of 33

Wagner are entitled to qualified immunity to the extent that Plaintiff alleges they failed to

intervene to prevent her malicious prosecution. *See Mata,* 791 F. Supp. 2d at 1156. Therefore,

the court finds that Defendants' Motions to Dismiss are properly granted with respect to

Plaintiff's fourth claim for relief.

**F.**     ***Claims for Exemplary Damages and Attorneys Fees***

As a final matter, the court finds it proper to dismiss Plaintiff's sixth and seventh claims

for punitive damages and attorney's fees, respectively. "A request for punitive damages is not a

separate claim for relief but rather, is a prayer for damages." *Jackson v. Johns,* 714 F. Supp.

1126, 1131 (D. Colo. 1989); *see also Riley v. Rollison,* No. 06-cv-01347-WYD-BNB, 2007 WL

324579, at *2 (D. Colo. Jan. 31, 2007). Similarly, § 1988, the basis for Plaintiff's attorney's fees

claim, "does not create independent causes of action, it simply 'defines procedures under which

remedies may be sough in civil rights actions.'" *Schroder v. Volcker,* 864 F.2d 97, 99 (10th Cir.

1988) (quoting *Brown v. Reardon,* 770 F.3d 896, 907 (10th Cir. 1985)). Therefore, Plaintiff's

request for punitive damages and attorney's fees are not properly asserted as self-standing

claims.

However, the court makes clear that it does not foreclose the possibility that Plaintiff

could recover punitive damages on her second claim for false arrest. Punitive damages are

available in § 1983 actions when "the defendant's conduct is show to be motivated by evil

motive or intent, or when it involves reckless or callous indifference to the federally protected

rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983). Based on the allegations of the

Complaint, as well as the fact that the court cannot conclude that there was "arguable probable

cause" to support Plaintiff's arrest, the court finds that Plaintiff could show at trial that Defendants acted with reckless or callous indifference to her constitutional rights. Likewise, a dismissal of Plaintiff's seventh claim would not foreclose her from recovering attorney's fees under § 1988, as they may be available to her if she succeeds on her false arrest claim. 42 U.S.C. § 1988(b) (in an action or proceeding to enforce a provision of § 1983, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee.)

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that "Motion to Dismiss Amended Complaint and Jury Demand of Defendants Wagner, Dixon, Paletta, and the City of Lakewood" (Doc. No. 32) and "Defendant Robert Kladde's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 34) be GRANTED in part and DENIED in part. Specifically, the court RECOMMENDS that Defendants' Motions to Dismiss be DENIED with respect to Plaintiff's second claim for false arrest and GRANTED in all other respects, and that the City of Lakewood and Defendant Paletta be dismissed as defendants.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

    Dated this 18th day of July, 2013.

BY THE COURT:

_____

Kathleen M. Tafoya
United States Magistrate Judge